# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

JANET SMITH                                                                                    PLAINTIFF

V.                          CASE NO. 3:19-CV-81-BD

ANDREW SAUL, Commissioner
Social Security Administration[1]                                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

**I.     Introduction:**

Janet Smith applied for disability insurance benefits and supplemental security income, alleging disability beginning April 5, 2012. (Tr. at 13, 167-77) Ms. Smith's claims were denied initially and upon reconsideration. (Tr. 99-105, 108-111) After conducting a hearing, an Administrative Law Judge (ALJ) denied her applications. (Tr. at 13-22, 27-50) Ms. Smith requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1-6) Ms. Smith filed a case in this Court seeking judicial review. This Court reversed the Commissioner's decision and remanded the case for further consideration. *Smith v. Colvin*, No. 3:15-CV-233-JTK (E.D. Ark. February 19, 2016). (Tr. at 438-53)

A second ALJ held a hearing on July 14, 2016. (Tr. 404-34) On September 16, 2016, the ALJ again denied Ms. Smith's applications. (Tr. 460-83) The Appeals Council

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to FED. R. CIV. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

granted Ms. Smith's request for review of the ALJ's decision and remanded the case on January 3, 2018. (Tr. 484-87)

A third ALJ held a hearing on April 11, 2018 (Tr. 380-403) and issued a decision, again denying Ms. Smith's applications for benefits. (Tr. 359-72) The Appeals Council denied Ms. Smith's request for review, making the decision the final decision of the Commissioner. (Tr. 349-55) Ms. Smith filed this case seeking judicial review of the ALJ's May 9, 2018 decision denying benefits. (Doc. No. 1)

## II.     The Commissioner's Decision:

In his decision denying Ms. Smith's applications for benefits, the ALJ found that Ms. Smith had not engaged in substantial gainful activity from her alleged onset date of April 5, 2012 through September 30, 2017, when she last met the insured status requirements. (Tr. at 361) At step two of the five-step analysis, the ALJ found that Ms. Smith had the following severe impairments: status-post left knee arthroscopy, depression, anxiety, mood disorder, borderline intellectual functioning, and obesity.[2] (Tr. 361)

At step three, the ALJ found that Ms. Smith's impairments did not meet or equal a listed impairment. He determined that Ms. Smith had the residual functional capacity (RFC) to perform light work, but was limited to occasional climbing, stooping,

---

[2] Despite medical sources consistently diagnosing Ms. Smith with post-traumatic stress disorder (PTSD) and the first two ALJs finding in their opinions that Ms. Smith had the severe impairment of PTSD, the ALJ here did not find PTSD to be one of Ms. Smith's severe impairments. (Tr. 15, 289, 465, 760, 833, 1010)

2

crouching, kneeling, and crawling. He further found that, due to non-exertional impairments, she was limited to unskilled/rote activity; she could understand, follow, and remember concrete instructions; and she would be limited to superficial contact, meeting and greeting the public, giving simple instructions, and directions. (Tr. 365-370)

The ALJ next found that Ms. Smith would be unable to perform any past relevant work. (Tr. at 370) Relying on the testimony of a Vocational Expert (VE), however, the ALJ found, based on Ms. Smith's age, education, work experience and RFC, that she could perform work in the national economy as a machine operator and housekeeper. (Tr. at 370-71) Based on these findings, the ALJ concluded that Ms. Smith was not disabled. (Tr. at 371)

### III. Discussion:

#### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Ash v. Colvin*, 812 F.3d 686, 689 (8th Cir. 2016) (quoting *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Id*. (quoting *Carlson v. Astrue*, 604 F.3d 589, 592 (8th Cir. 2010)). The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Lacroix*

*v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

**B. Ms. Smith's Argument on Appeal**

Ms. Smith maintains that the ALJ's decision to deny benefits is not supported by substantial evidence. Specifically, she argues that the ALJ: erred by finding that she could perform other work in the economy, because he did not give good reasons for discounting the opinions of her treating therapist; failed to include any limitations on concentration, persistence, or pace; and failed to follow the Court's remand order to properly assess whether she was disabled under listing 12.05. (Doc. No. 13 at 21-28) After reviewing the record, the Court concludes that the ALJ erred in evaluating the opinions of Ms. Smith's treating therapist when determining the effects that her mental impairments would have on her ability to work.

**C. Relevant Facts**

Ms. Smith was 53 years old at the time of her last hearing and was living with her mother. (Tr. at 384-85) She was able to drive to familiar places. (Tr. 387, 420) She had completed the tenth grade and had taken the General Educational Development exam, but she did not pass because of problems concentrating. (Tr. 387) At one time, she had obtained a Certified Nursing Assistant (CNA) license. (Tr. 387) She had past work as a CNA at a nursing home, but she left that job because of a mental breakdown. (Tr. 32-33, 388-90, 395) She did not have any hobbies and did not attend social activities. (Tr. 420)

Ms. Smith had arthroscopic left knee surgery, which helped; but, she continued to have problems bending her knee. (Tr. 390-91) Because of her weight, she could not walk a long distance without becoming winded. (Tr. 392) She estimated that, because of her knee problems, she could walk for only about 10 or 15 minutes before resting. (Tr. 392, 394) She did not take pain medication. (Tr. 393)

As for her mental impairments, Ms. Smith testified that she regularly attended therapy, but did not believe she would ever be cured. (Tr. 396) She stated that therapy and medication had helped, but she still had a "lot of depression days." (Tr. 396, 416-17) Some periods of depression lasted up to 14 days. (Tr. 416)

She could clean house, do dishes, and sweep, but on days when she was depressed, she was not motivated to do anything. (Tr. 396) She could shop alone but had to go early in the morning because crowds gave her anxiety. (Tr. 397) She could not remember things she needed at the store and had to make lists. She was able to remember to take her medications. (Tr. 397-98) She experienced hallucinations from 2014 to 2016 (Tr. 421) and experienced flashbacks to a time when she was sexually abused as a child. (Tr. 422)

On September 10, 2012, Dennis Vowell, Jr., Psy.D., performed a consultative psychological evaluation of Ms. Smith, including a WAIS-IV test to her. Her full-scale IQ score was 70, falling in the "lower limits of the borderline range." (Tr. 288-89) Dr. Vowell diagnosed PTSD, depressive disorder, and borderline intellectual functioning. (Tr. 289) Dr. Vowell opined that Ms. Smith would have difficulty coping with mild-to-moderate stress and that she "generally displayed mild to moderate impairments in her

ability to respond adequately to basic assessment of attention and concentration capacity." (Tr. 289)

### D. Opinion Evidence

Ms. Smith argues that the ALJ erred by failing to give proper weight to the opinion of her treating therapist, Erin Snodgrass, a licensed clinical social worker, who met with Ms. Smith routinely from September, 2015 to February 22, 2018. (Tr. 823-1010)

The first reason the ALJ articulated for discounting Ms. Snodgrass's opinion is that she is not "presently recognized as an acceptable medical source." (Tr. 368) The parties agree that Ms. Smith's claim was filed before March 27, 2017; therefore, Ms. Snodgrass is not an acceptable medical source for establishing the existence of a mental impairment. 20 C.F.R. §§ 404.1513, 404.1527, 416.927. The Commissioner's regulations provide, however, that after considering evidence from "acceptable medical sources" for purposes of establishing a medical impairment, the ALJ may rely on evidence from "other medical sources" when assessing the severity of a claimant's impairments and in determining how the impairment affects a claimant's ability to work. 20 C.F.R. §§ 404.1527 and 416.927 ("it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole); see also *Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2016)

(when considering the weight to give other medical sources, the ALJ has discretion and is permitted to consider any inconsistencies found within the record.) (citing *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005); *Shantos v. Barnhart*, 328 F.3d 418, 426-27 (8th Cir. 2003) (when an ALJ is assessing the severity of an impairment, he or she should not ignore the opinions of other non-physician medical sources).

Additionally, under recent administrative guidelines, Ms. Snodgrass would be deemed an acceptable "medical source." See 20 C.F.R. 404.1502(d) (defining medical source as a healthcare worker who is certified by a state and is working within the scope of practice permitted under state or federal law); *Aguiniga v. Colvin*, 833 F.3d 896, 901 (8th Cir. 2016); Social Security Ruling 06–03p (recognizing that licensed clinical social workers are handling more cases now than in previous years and that their opinions are "important and should be evaluated on key issues such as impairment severity and functional effects.").

When determining Ms. Smith's RFC, the ALJ gave great weight to the opinion of Dr. Vowell, who performed a consultative examination of Ms. Smith on September 10, 2012, less than two months after Ms. Smith applied for DIB and SSI and over five years before the ALJ issued this latest opinion. Describing Ms. Smith's thought process, Dr. Vowell noted that throughout the examination Ms. Smith displayed, "some difficulty with focusing on task at hand." (Tr. 287) He stated that Ms. Smith presented as cognitively lethargic but fully oriented; and she displayed a depressed affect during most of the evaluation. (Tr. 287) After performing WAIS-IV testing, Dr. Vowell opined that

Ms. Smith's full-scale IQ was 70; that is, in the "lower limits of the borderline range." He considered the results valid.[3] (Tr. 286)

With respect to Ms. Smith's ability to cope with typical mental/cognitive demands of basic work-like tasks, Dr. Vowell noted that, "in situations of mild to moderate stress it is likely [Ms. Smith] would have difficulty coping efficiently." (Tr. 289) He concluded that, based on Ms. Smith's ability to drive unfamiliar routes but with anxiety, perform household chores, and complete basic activities of daily living, her mental impairments did not interfere with her adaptive functioning. He also found that Ms. Smith was able to communicate in a socially adequate manner and to cope with the typical mental/cognitive demands of basic work-like tasks. Her mild-to-moderate stress, however, would make it difficult for her to cope and sustain concentration on basic tasks. Finally, he found that Ms. Smith could sustain persistence in completing tasks and had the capacity to perform within an acceptable timeframe. (Tr. 289-90) He assigned a global assessment of functioning (GAF) score of "50-60." (Tr. 289)

Dr. Vowell's opinion about Ms. Smith's limitations is contradicted by other medical evidence in the record. In October of 2017, Miguel Casillas, M.D., increased Ms. Smith's dosages of Zoloft and Depakote and assigned a GAF score of 50. (Tr. 323-24) During an annual psychiatric evaluation in July, 2013, Dr. Casillas had noted that Ms. Smith's anger issues were under control, but that she was still experiencing mood swings,

---

[3] Ms. Smith's subscores included a verbal comprehension index of 66, perceptual reasoning index of 73, working memory index of 83, and processing speed of 81. (Tr. 288)

panic attacks, and auditory/visual hallucinations. (Tr. 307-08) He assessed Ms. Smith's judgment, comprehension, and insight to be "very limited" and estimated her IQ to be "dull normal to borderline." (Tr. 306) He diagnosed bipolar II, panic disorder without agoraphobia, PTSD, and obesity. (Tr. 307) He assigned a GAF score of 40 and found her prognosis was "guarded." (Tr. 307)

Dr. Casillas continued to treat Ms. Smith throughout 2014. He examined her monthly from June of 2014 until December of 2014; and March to June of 2015. (Tr. 691-694, 706-23, 744-45, 760-62, 767-75) In June of 2015, Dr. Casillas diagnosed Ms. Smith with bipolar II (recurrent major depressive episodes with hypomania), panic disorder without agoraphobia, and PTSD. (Tr. 708) He assigned Ms. Smith a GAF score of 48, and he prescribed Alprazolam, Zoloft, and Trileptal. (Tr. 709-10)

In September of 2015, Families, Inc. performed an intake assessment of Ms. Smith. (Tr. 825) At that time, she reported being depressed and stated that she did not want to live. (Tr. 825) Ms. Smith requested to see therapist Erin Snodgrass. John Burnett, M.D., performed a psychological evaluation of Ms. Smith the same month. He noted that Ms. Smith's symptoms indicated severe depressive disorder with history of hypomanic episodes. He opined that she met the criteria for PTSD due to sexual trauma. (Tr. 819) He assigned Ms. Smith a GAF score of 40 and prescribed Lamictal, Latuda, and Xanax. (Tr. 818-21)

Ms. Smith began psychotherapy with Erin Snodgrass in September of 2015 and continued that therapy until February of 2018. Ms. Smith sought therapy from Ms. Snodgrass 53 times during a 30-month time frame.

In May, 2016, Ms. Snodgrass opined that Ms. Smith had *marked* limitation in her ability: to remember locations and work-like procedures; to make simple work-related decisions; to ask simple questions or request assistance; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently. (Tr. 854-55) Ms. Snodgrass also found that Ms. Smith had *marked-to-severe* limitations in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms or to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 855)

Finally, Ms. Snodgrass found that Ms. Smith had *extreme* limitations in her ability: to perform activities within a schedule, maintain regular attendance, or be punctual; *extreme* limitation in her ability to sustain an ordinary routine without special supervision; *extreme* limitation in her ability to work in coordination with or proximity to others without being distracted by them; and *extreme* limitation in her ability to travel in unfamiliar places or use public transportation. (Tr. 854-55)

In a letter dated February 22, 2018, after counselling Ms. Smith for over two years, Ms. Snodgrass summarized her professional opinion as follows:

> [Ms. Smith] would have a difficult time working for the following reasons: she has increased panic attacks around people outside of her home, low threshold for frustration and angry outbursts, and recurrent depressive episodes. These depressive episodes have been quite debilitating in the past

with symptoms including excessive sleep, loss of interest and motivation, feelings of hopelessness and suicidal ideation.

(Tr. 1010)

The ALJ discounted Ms. Snodgrass's 2016 opinion because it "refers to the claimant's 2012 issues and past symptoms and condition but does not reflect the claimant's most recent issues that are handled with medication." The ALJ also discounted Ms. Snodgrass's opinions because they were "inconsistent with the treatment notes." (Tr. 369)

The ALJ erred in discounting Ms. Snodgrass's treating source statements, because her assessments were consistent with Ms. Smith's testimony and her treatment records. The ALJ erred in discounting Ms. Snodgrass's 2016 opinion because her 2018 treatment notes indicated that Ms. Smith's mental health issues were "handled with medication." (Tr. 369)

In March of 2017, Ms. Smith's treatment plan included continued treatment because of her anxiety and depression. (Tr. 939-42) In April of 2017, Dr. Burnett noted that Ms. Smith had a "slightly flat affect." (Tr. 928) Ms. Smith reported that she had been anxious and had not been sleeping well; but, she declined modification of her medications. (Tr. 928-31) In June of 2017, Ms. Smith reported to Ms. Snodgrass that she was more stressed and depressed and had been isolating in her room. (Tr. 922-23) And later the same month, Ms. Smith reported increased depression and a lapse in self-care. (Tr. 920-21)

11

When Dr. Burnett saw Ms. Smith in July of 2017, he added Trazodone to her medication regimen and reduced her Xanax. (Tr. 916-19) In September of 2017, Ms. Smith reported increased depression and spending most of her time in her room. (Tr. 910-11) In a treatment plan for Ms. Smith dated September 5, 2017, Ms. Snodgrass noted that additional treatment was necessary to address Ms. Smith's mood and anxiety. (Tr. 906-9)

During a medication management visit on September 11, 2017, Ms. Smith reported worsening depression and a lack of desire to do anything. Dr. Burnett prescribed Trazodone and increased her Latuda dosage. Ms. Smith again reported depression in November of 2017 (Tr. 889-92), and a treatment plan in December indicated a need for continued treatment to address mood and anxiety symptoms and a need to monitor Ms. Smith for suicidal ideation. (Tr. 879-82) When Ms. Smith sought counseling in February of 2018, she reported increased depression and no desire to do anything. (Tr. 1004-05) Ms. Snodgrass's opinion is consistent with treatment notes indicating that Ms. Smith continuously struggled with depression, anxiety, and bi-polar II disorder, despite being on medications, including Lamictal, Xanax, Zoloft and Latuda.

These treatment records support Ms. Snodgrass's opinion set out in her February 22, 2018 letter, *i.e.*, that Ms. Smith was being treated for bipolar II disorder, PTSD, and panic disorder, and that she would have a "difficult time working" because of panic attacks around people outside of her home, her low threshold for frustration and angry outbursts, and her recurrent depressive episodes. (Tr. 1010)

The ALJ's decision to reject Ms. Snodgrass's opinion is not supported by substantial evidence because the record establishes that Ms. Smith was *not* "doing fine" on medication from 2017 to 2018.

**IV. Conclusion:**

The ALJ's decision is not supported by substantial evidence on the record. The ALJ did not properly evaluate the evidence related to the effect Ms. Smith's mental impairments had on her ability to work. The decision is hereby reversed, and the case remanded with instructions for further review consistent with this opinion.

IT IS SO ORDERED, this 18th day of March, 2020.

_____
UNITED STATES MAGISTRATE JUDGE